**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ) | |
| JOHN W. PRUITT, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 18-1101-MN-SRF |
| ) | |
| AIR & LIQUID SYSTEMS ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

## I.   INTRODUCTION

Presently before the court in this asbestos-related personal injury action are the unopposed motions for summary judgment of Taco Inc. ("Taco") (D.I. 317), Terex USA, LLC ("Terex")[1] (D.I. 321), and Trane U.S. Inc. ("Trane") (D.I. 328), and the motion for partial summary judgment[2] of Deere & Company ("Deere") (D.I. 327) (collectively, "defendants"). Plaintiff John W. Pruitt, Sr. ("Mr. Pruitt") did not respond to these motions. As indicated in the chart *infra* and for the reasons that follow, the court recommends GRANTING each defendant's motion for summary judgment.[3]

---

[1] Terex avers that it was erroneously sued as the successor-in-interest to American Hoist & Derrick Company. (D.I. 322 at 1)

[2] Mr. Pruitt's only claim that will survive once Deere's motion is granted is his negligence claim, but only to the extent that it is based on his exposure to parts originally manufactured by Deere, not aftermarket replacement parts. (D.I. 327)

[3] Defendants' opening briefs in support of their respective motions for summary judgment are as follows: Deere (D.I. 331), Taco (D.I. 320), Terex (D.I. 322), and Trane (D.I. 330).

| Defendant | Motion for Summary Judgment |
|---|---|
| Taco Inc. | GRANT |
| Terex USA, LLC | GRANT |
| Trane U.S. Inc. | GRANT |
| **Defendant** | **Motion for Partial Summary Judgment** |
| Deere & Company | GRANT |

## II. BACKGROUND

### a. Procedural History

On July 26, 2018, plaintiff originally filed this personal injury action against multiple defendants, asserting claims arising from Mr. Pruitt's alleged harmful exposure to asbestos. (D.I. 1) On August 9, 2018, plaintiff filed an amended complaint (the "First Amended Complaint"). (D.I. 50) On January 31, 2020, Deere, Taco, Terex, and Trane filed motions for summary judgment, individually. (D.I. 327; D.I. 317; D.I. 321; D.I. 328) Plaintiff did not respond to these motions.[4]

### b. Facts

#### i. Mr. Pruitt's alleged exposure history

Plaintiff alleges that Mr. Pruitt developed mesothelioma as a result of exposure to asbestos-containing materials during his service as a machinist mate in the United States Navy and as a parts purchaser at Schroer Implement Co. ("Schroer"). (D.I. 50 at ¶ 15; Ex. A) Plaintiff contends that Mr. Pruitt was injured due to exposure to asbestos-containing products that defendants manufactured, sold, distributed, licensed, or installed. (D.I. 50 at ¶¶ 5-13, 19-22) Accordingly, plaintiff asserts claims for strict liability, negligence, false representation, and punitive damages. (D.I. 50)

---

[4] Deere (D.I. 359; D.I. 388) and Taco (D.I. 355) requested that their motions be granted based on no opposition.

Mr. Pruitt served in the Navy from September 1959 to April 1962. (D.I. 50, Ex. A) Mr. Pruitt worked as a trainee and machinist mate onboard the *USS Bayfield* and *USS Tolovana*. (*Id.*) He was honorably discharged in 1962. (*Id.*; D.I. 331, Ex. A at 42:17-21)

Mr. Pruitt subsequently worked at Schroer, a John Deere farm equipment dealership in Valdosta, Georgia, from 1963 to 1974. (D.I. 331, Ex. A at 43:1-8; Ex. B at 30:2-8, 90:5-12) For the first three years at Schroer, he worked as a runner, delivering and picking up parts such as brakes, clutches, and paint decals. (D.I. 331, Ex. B at 30:9-16, 103:22-104:2, 104:13-20) In 1966, he started working as a parts manager and was tasked with finding and ordering parts, such as brakes and clutches, that were installed at Schroer. (D.I. 331, Ex. A at 46:11-14; Ex. B at 30:25-31:2, 102:18-22, 103:14-21) Approximately fifteen percent of the John Deere tractors were under warranty, and, for these trucks, the mechanics at Schroer used Bendix brakes and clutches obtained from a John Deere dealer. (D.I. 331, Ex. A at 49:1-19) Each Bendix brake came in a box labeled with a part number but did not contain a warning that it came from a John Deere dealership. (D.I. 331, Ex. B at 123:4-14) Mr. Pruitt did not recall seeing any parts that were labelled "John Deere." (*Id.* at 144:23-145:15) He stated that he handled bare parts if they were delivered without packaging. (*Id.* at 163:21-164:7) For the eighty-five percent of John Deere tractors that were not under warranty, the mechanics used "[a]ny brand [of brakes they] could get a hold of," typically "the cheapest [they] could find." (D.I. 331, Ex. A at 50:6-13) John Deere was the most expensive brand of equipment. (D.I. 331, Ex. B at 157:14-25) He only ordered John Deere supplied clutches for the John Deere brakes, but cannot recall who manufactured these clutches. (D.I. 331, Ex. A at 50:21-51:2, 53:2-5)

Mr. Pruitt testified that, during his career at Schroer, he did not perform any work on farm equipment. (D.I. 331, Ex. B at 32:10-21) As the parts manager, he spent approximately

3

eighty percent of his time waiting on customers and mechanics at the parts counter, which was twenty to thirty feet away from the mechanics performing work on the tractors. (D.I. 331, Ex. A at 48:15-17; Ex. B at 32:22-33:1) He would only see mechanics perform work if he took a part into the mechanic area or if he walked through the shop. (D.I. 331, Ex. B at 131:22-132:3, 133:5-21) Mr. Pruitt could not estimate how often he took parts into the mechanic area, but noted that he did not normally do so, as mechanics ordinarily came to the parts counter to retrieve parts. (*Id.* at 132:4-133:4)

Mr. Pruitt testified that he observed others perform brake work two or three times per week on both diesel and gas John Deere tractors. (D.I. 331, Ex. A at 45:14-16; Ex. B at 107:12-108:1) Mr. Pruitt testified that he also observed others perform approximately two or three clutch jobs per week and suggested that the frequency of these clutch jobs increased in the springtime. (D.I. 331, Ex. A at 45:17-22) He testified that when mechanics performed brake jobs or clutch jobs, dust was produced. (*Id.* at 47:16-48:14)

He left Schroer in 1977.[5] (*Id.* at 53:15-17) Mr. Pruitt was diagnosed with mesothelioma on May 29, 2018. (D.I. 50, Ex. B)

### ii. Plaintiff's product identification evidence

Mr. Pruitt was deposed on August 20 and 21, 2018. (D.I. 79; D.I. 85) Edmond Dumas ("Mr. Dumas"), who served on the *USS Tolovana* with Mr. Pruitt, was also deposed on February 12, 2019 as a fact and product identification witness. (D.I. 193; D.I. 194; D.I. 195)

---

[5] The First Amended Complaint notes that Mr. Pruitt left Schroer around 1963 or 1964, but Mr. Pruitt testified that he left Schroer in 1976 or 1977 in his deposition. (D.I. 50, Ex. A; D.I. 313, Ex. B at 53:15-17)

4

### III. LEGAL STANDARD

#### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence

of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. *See* Fed. R. Civ. P. 56(e)(2)-(3). A plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to oppose the motion, the court must still find that the undisputed facts warrant judgment as a matter of law. *See Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine whether the unopposed motion for summary judgment "has been properly made and supported." *Williams v. Murray, Inc.*, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v. Certegy Check Servs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

**b. Maritime Law: Substantial Factor Causation**

The parties do not dispute that maritime law applies to all Naval and sea-based claims. (D.I. 274) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the

6

product was a substantial factor[6] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[7] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference

---

[6] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[7] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

7

that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

In *Devries*, the Supreme Court rejected "the more defendant-friendly bare-metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." *Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986, 993 (2019). The Supreme Court held that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 987, 995-96.

### c. Georgia Law

The parties do not dispute that Georgia law applies to all land-based claims. (D.I. 274) Under Georgia law, the plaintiff in an asbestos-exposure action must show that a particular defendant's product was a "contributing factor in bringing about the plaintiff's damages," which requires the plaintiff to establish that he was in proximity to the use of defendant's asbestos-containing product. *John Crane, Inc. v. Jones*, 604 S.E.2d 822, 824 (Ga. 2004). It is not necessary for plaintiff to demonstrate that defendant's contribution to his resulting injury was "substantial." *Id.* Furthermore, "Georgia's causation standard does not require the plaintiff to recall a specific time, job, or incident during which he used the defendant's product." *In re Asbestos Litig.*, 2011 WL 1123053, at *1 (Del. Super. Ct. Mar. 15, 2011) (analyzing motion for

8

summary judgment in asbestos-related personal injury action governed by Georgia law). Rather, a plaintiff "must present evidence 'that a particular defendant's asbestos-containing product was used at the job site and that the plaintiff was in proximity to that product at the time it was being used.'" *Hoffman v. AC&S, Inc.*, 548 S.E.2d 379, 382 (Ga. Ct. App. 2001) (quoting *Odum v. Celotex Corp.*, 764 F.2d 1486, 1488 (11th Cir. 1985)).

## IV. DISCUSSION

### a. Deere & Company

#### i. Count I – Strict Liability

Mr. Pruitt alleges exposure to asbestos-containing products sold by Deere during his career at Schroer and, therefore, Georgia law applies to this alleged land-based exposure. (D.I. 274) Under Georgia law, strict liability for allegedly defective products is limited to the manufacturer of personal property sold as new property. *See* O.C.G.A. § 51-1-11. An entity may be a manufacturer if it satisfies one of three alternative definitions: "a) an actual manufacturer or designer of the product; or b) a manufacturer of a component part which failed and caused the plaintiff injury; or c) an assembler of component parts who then sells the item as a single product under its own trade name." *Freeman v. United Cities Propane Gas of Georgia, Inc.*, 807 F. Supp. 1533, 1539 (M.D. Ga. 1992) (quoting *Morgan v. Mar-Bel, Inc.*, 614 F. Supp. 438, 440 (N.D. Ga. 1985)). Deere cites the Affidavit of Kirk Ney ("Mr. Ney"), a retired engineer formerly employed by Deere, wherein Mr. Ney stated that Deere was not the actual manufacturer of any brakes or clutches that it sold or supplied as genuine replacement parts for any model of Deere tractor. (D.I. 331 at 4; Ex. C) Moreover, Deere was not involved with the design, manufacture, or assembly of replacement parts, which were packaged and relabeled with its name. (D.I. 331 at 4; Ex. C) Therefore, Deere is not a manufacturer under O.C.G.A. § 51-1-11.

9

*See Freeman*, 807 F. Supp. at 1539.  Accordingly, the court recommends granting Deere's partial motion for summary judgment with respect to plaintiff's strict liability claim as to its replacement parts.

Furthermore, Deere argues that plaintiff's strict liability claim regarding Deere original equipment parts is time-barred by Georgia's statute of repose.  (D.I. 331 at 6-7)  This statute of repose is substantive Georgia law.  See *Browning v. Maytag Corp.*, 401 S.E.2d 725, 727 (Ga. 1991).  O.C.G.A. § 51-1-11(b)(2) states that "[n]o action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury."  O.C.G.A. § 51-1-11(b)(2).  Mr. Pruitt alleges that he worked at Schroer from 1963 to 1974.  (D.I. 331, Ex. B at 90:5-9)  His last alleged exposure to Deere's products occurred, therefore, in 1974.  (*Id.*)  More than ten years passed before the present action was filed on July 26, 2018.  (D.I. 1)  Accordingly, plaintiff's strict liability claim regarding Deere original equipment parts is time-barred.

Therefore, the court recommends granting Deere's partial motion for summary judgment with respect to Count I, strict liability.

      ii.  **Aftermarket Replacement Parts**

To the extent that plaintiff claims that Deere is liable for the injuries that Mr. Pruitt incurred from exposure to aftermarket replacement parts, the court recommends granting Deere's partial motion for summary judgment.  Georgia does not "expand the traditional duty to warn so as to require a manufacturer to warn of the hazards in *another* manufacturer's product."  *Davis v. John Crane, Inc.*, 836 S.E.2d 577, 584 (Ga. Ct. App. 2019).  Mr. Pruitt testified that for John Deere tractors not under warranty, he would order various brands of inexpensive aftermarket

10

replacement brakes.  (D.I. 331, Ex. A at 50:6-24)  He testified that John Deere equipment was expensive.  (D.I. 331, Ex. B at 157:14-22)  To the extent plaintiff claims that Deere is liable for the injuries that Mr. Pruitt incurred from exposure to these aftermarket replacement parts, the court recommends granting Deere's partial motion for summary judgment.

### iii.  Count III – False Representation

Plaintiff alleges a claim of false representation under Restatement of Torts Section 402-B.  (D.I. 50 at ¶¶ 35-39)  Deere represents that Georgia has not adopted this provision of the Restatement and the court has not independently found authority suggesting that Georgia has adopted this provision.  (D.I. 331 at 8)  Furthermore, there is no evidence in the record that Deere made a representation that Mr. Pruitt relied upon that resulted in his injury.  None of the parts packaging contained any writing other than part numbers.  (D.I. 331, Ex. B at 123:4-14)  Therefore, the court recommends granting Deere's partial motion for summary judgment as to Count III, false representation.

### iv.  Punitive Damages

Under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1.  There is no evidence in the record of willful misconduct or wantonness that would permit plaintiff's claim of punitive damages against Deere to survive summary judgment.  Therefore, the court recommends granting Deere's partial motion for summary judgment, as to plaintiff's demand for punitive damages.

b.  **Taco Inc.**

The court recommends granting Taco's motion for summary judgment.  There is no genuine issue of material fact in dispute as to whether a Taco product was a substantial factor in causing Mr. Pruitt's injuries, as required by maritime law, or a contributing factor in bringing about his injuries, as required by Georgia law.  There is no evidence of plaintiff's identification of any product manufactured, distributed, or supplied by Taco.  Mr. Pruitt has failed to identify exposure to any Taco product.  Therefore, there is no need for the court to address substantial factor causation or contributing factor causation under maritime or Georgia law.  Furthermore, there is no evidence to support plaintiff's allegations false representation against Taco.  Moreover, there is no evidence in the record of willful and wanton conduct that would permit plaintiff's claim of punitive damages against Taco to survive summary judgment.  Therefore, the court recommends granting Taco's motion for summary judgment.

c.  **Terex USA, LLC**

The court recommends granting Terex's motion for summary judgment.  There is no genuine issue of material fact in dispute as to whether a Terex product was a substantial factor in causing Mr. Pruitt's injuries, as required by maritime law, or a contributing factor in bringing about his injuries, as required by Georgia law.  There is no evidence of plaintiff's identification of any product manufactured, distributed, or supplied by Terex.  Mr. Pruitt has failed to identify exposure to any Terex product.  Therefore, there is no need for the court to address substantial factor causation or contributing factor causation under maritime or Georgia law.  Furthermore, the court recommends that summary judgment be granted in favor of Terex because plaintiff does not oppose defendant's motion with respect to the false representation count and there is a lack of evidence presented with respect to this claim.  (D.I. 321; D.I. 322)  Moreover, there is no

evidence in the record of willful and wanton conduct that would permit plaintiff's claim of punitive damages against Terex to survive summary judgment. Therefore, the court recommends granting Terex's motion for summary judgment.

### d. Trane U.S. Inc.

The court recommends granting Trane's motion for summary judgment. There is no genuine issue of material fact in dispute as to whether a Trane product was a substantial factor in causing Mr. Pruitt's injuries, as required by maritime law, or a contributing factor in bringing about his injuries, as required by Georgia law. There is no evidence of plaintiff's identification of any product manufactured, distributed, or supplied by Trane. Mr. Pruitt has failed to identify exposure to any Trane product. Therefore, there is no need for the court to address substantial factor causation or contributing factor causation under maritime or Georgia law. Furthermore, the court recommends that summary judgment be granted in favor of Trane because plaintiff does not oppose defendant's motion with respect to the false representation count and there is a lack of evidence presented with respect to this claim. (D.I. 328; D.I. 330) Moreover, there is no evidence in the record of willful and wanton conduct that would permit plaintiff's claim of punitive damages against Trane to survive summary judgment. Therefore, the court recommends granting Trane's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting defendants' motions for summary judgment.

13

| Defendant | Motion for Summary Judgment |
|---|---|
| Taco Inc. | GRANT |
| Terex USA, LLC | GRANT |
| Trane U.S. Inc. | GRANT |
| **Defendant** | **Motion for Partial Summary Judgment** |
| Deere & Company | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 29, 2020

Sherry R. Fallon
United States Magistrate Judge